UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff/Respondent,<br><br>    v.<br><br>MICHAEL INDELICATO,<br><br>    Defendant/Petitioner<br>_____/ | No. CR-85-0078-EMC<br><br>**ORDER DENYING PETITIONER'S MOTION FOR WRIT OF CORAM NOBIS AND DENYING PETITIONER'S MOTION FOR AN EVIDENTIARY HEARING**<br><br>**(Docket Nos. 85, 96)** |

## I.   INTRODUCTION & BACKGROUND

In May 1985, Petitioner Michael Indelicato was convicted by a petit jury of this Court of (1) conspiring to receive rifles stolen from foreign and interstate shipment in violation of 18 U.S.C. §§ 371 and 549; (2) receipt of stolen interstate merchandise in violation of 18 U.S.C. § 549; and (3) receipt of a firearm while under indictment in violation of 18 U.S.C. § 922. *See United States v. Indelicato*, 800 F.2d 1482, 1483 (9th Cir. 1986) (per curiam). Indelicato filed a direct appeal, which was denied by the Ninth Circuit in the per curiam opinion cited above. *See id.* Indelicato did not subsequently file a petition for rehearing, a writ of certiorari, or a federal habeas petition. Docket 85-2 (Indelicato Decl.) at ¶¶ 5-8. He claims his appellate counsel informed him that such requests for relief would be without "basis." *See id.*

Indelicato served his prison sentence, and was released from federal custody on September 30, 1987. *See* Docket No. 85 (Petition) at 4. Between 1987 and 2012, Indelicato "decided to not let this unfortunate episode [(*i.e.*, his conviction)] stop me from living a productive and happy life." Indelicato Decl. at ¶ 12. Indelicato pursued his education, receiving a masters degree in philosophy

1  from the University of California, Berkeley, in 1988, and a masters degree in law from the
2  University of Cambridge in 1991. *Id.* at ¶ 1. It is undisputed that he made no attempts whatsoever
3  to challenge his conviction between 1987 and 2012.
4        In September 2012, Indelicato claims he first learned about the possibility of attacking his
5  conviction through a coram nobis petition. Indelicato Decl. at ¶ 13. Thereafter, Indelicato states
6  that he searched for a lawyer to file a coram nobis petition on his behalf. *Id.* at ¶¶ 13-20. Indelicato
7  hired his current counsel on June 17, 2013. *Id.* at ¶ 19. Indelicato's attorney filed the instant coram
8  nobis petition on July 25, 2014.[1] Docket No. 85.
9        In his fifty-seven page long petition, Indelicato argues that various errors occurred during his
10 criminal trial thirty years ago that warrant vacatur of his conviction, including constructive
11 amendment of the Indictment, ineffective assistance of trial and appellate counsel, and prosecutorial
12 misconduct. Indelicato also argues that the evidence is insufficient to sustain a conviction on any of
13 the three counts with which he was charged and ultimately found guilty by the jury. Indelicato asks
14 this Court to either vacate his conviction in its entirety, or vacate the conviction and order a retrial.
15 Petition at 57. For the reasons explained below, the Court hereby **DENIES** Indelicato's petition.
16 Specifically, the Court finds that Indelicato has not shown that "valid reasons exist for not attacking
17 the conviction earlier," *United States v. Riedl*, 496 F.3d 1003, 1006 (9th Cir. 2007), and further finds
18 that his petition is barred by laches. *See Telink, Inc. v. United States*, 24 F.3d 42, 45 (9th Cir. 1994)
19 (holding that laches may bar a coram nobis petition where the petitioner's "unreasonable delay
20 causes prejudice" to the Government). Finally, while the Court does not definitively reach the
21 merits in this Order, the Court further observes that it has serious doubts as to whether Indelicato's
22 petition raises issues sufficiently serious to warrant the "highly unusual remedy" of coram nobis,
23 even if his petition was timely. *See Riedl*, 496 F.3d at 1005.

---

[1] Due to an apparent oversight, the coram nobis petition remained "assigned" to by-then-deceased District Judge John P. Vukasin, who had presided over Indelicato's trial. This case was reassigned to the undersigned on February 28, 2015, and the Court directed the Government to file an appropriate response. Docket Nos. 89 and 92. The matter was fully briefed on July 6, 2015. Docket No. 95.

## II. **DISCUSSION**

"Both the Supreme Court and we have long made clear that the writ of error coram nobis is a highly unusual remedy, available only to correct grave injustices in a narrow range of cases where no more conventional remedy is applicable." *Riedl*, 496 F.3d at 1005. Indeed, the Supreme Court has clarified that the writ of coram nobis is an "extraordinary remedy" that should be granted "only under such circumstances compelling such action to achieve justice." *United States v. Morgan*, 346 U.S. 502, 511 (1954); *see also United States v. Kwan*, 407 F.3d 1005, 1009-10 (9th Cir. 2005) (explaining that the writ is only available in those rare cases where the petitioner is "suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors"), *abrogated in part by Padilla v. Kentucky*, 559 U.S. 356 (2010).

Because coram nobis is such an unusual remedy, the petitioner bears a heavy burden to show his entitlement to such relief. *See Riedl*, 496 F.3d at 1005-06. Specifically, the petitioner must show each of the following to qualify for coram nobis relief:

> (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character.

*Id.* at 1006 (quoting *Hirabayashi v. United States*, 828 F.2d 591, 604 (9th Cir. 1987)). The Government does not currently contest that Indelicato can satisfy the first and third coram nobis requirements, but vigorously disputes that he can satisfy either the second element (valid reasons exist for not attacking the conviction earlier) or the fourth element (the error is of the most fundamental character). *See* Docket No. 94 (Opp. Br.) at 6. The Court agrees that Indelicato cannot show that valid reasons exist for waiting more than a quarter century to seek coram nobis relief in this case.

A. <u>Indelicato's Petition is Untimely</u>

While there is no formal statute of limitations that applies to coram nobis petitions, "courts have required coram nobis petitioners to provide valid or sound reasons explaining why they did not attack their sentences or convictions earlier." *Kwan*, 407 F.3d at 1012 (citations omitted). Moreover, the Ninth Circuit has held that petitioners must exercise due diligence. *See Riedl*, 496

F.3d at 1008; *see also Klein v. United States*, 880 F.2d 250, 254 (10th Cir. 1989) ("Klein failed to exercise due diligence in seeking the writ, a prerequisite to [coram nobis] relief."). Indelicato has not done so here. First, Indelicato has failed to reasonably explain why he did not raise the errors now asserted in this petition "during trial, on direct appeal or through a 28 U.S.C. § 2255 petition." *Riedl*, 496 F.3d at 1006. As in *Riedl*, where the Ninth Circuit affirmed a district court's finding that a coram nobis petition had been unreasonably delayed, there is no dispute that "the relevant law has remained the same throughout this litigation, and [Indelicato] actually filed post-verdict motions with the district court and a direct appeal with [the Ninth Circuit], none of which mentioned h[is] present claims." *Id.* The law and facts relevant to Indelicato's current petition have been the same since he was convicted, and thus Indelicato "could have possibly raised the claims in the direct appeal to the Ninth Circuit or under 28 U.S.C. § 2255." (emphasis and internal modification omitted). His failure to do so "is fatal to [Indelicato's] request that the extraordinary writ of error coram nobis be issued here." *Id.*; *see also United States v. Keane*, 852 F.2d 199, 202 (7th Cir. 1988) ("Claims that could have been raised by direct appeal are outside the scope of the writ [of coram nobis]."); *United States v. Correa-De Jesus*, 708 F.2d 1283, 1286 (7th Cir. 1983) (denying petition where petitioner waited sixteen years to re-litigate claim that he could have raised on direct appeal); *Riedl*, 496 F.3d at 1007 (rejecting coram nobis petition where "petitioner did not exercise due diligence").

Indelicato argues that his failure to raise these claims earlier, such as on direct appeal or in a habeas petition, should be excused because his various lawyers (wrongly) advised him not to file additional appeals or a federal habeas petition. Indelicato Decl. at ¶¶ 4-11. Thus, since 1987, when he was so advised, Indelicato claims he was under the mistaken impression that "there was nothing more that [he] could do" to attack his conviction. *Id.* at ¶ 11. This is not a valid excuse for waiting more than two decades to file for coram nobis relief. Indeed, the Court observes that Indelicato received a masters degree in law in 1991, and yet he still waited more than two decades to research possible avenues for relief from his conviction. *Id.* at ¶ 1. Indelicato's arguments to the contrary are not persuasive.

First, Indelicato cites three cases where the writ of coram nobis has been granted after delays even longer than the delay here. Specifically, Indelicato cites *Hirabayashi*, where the writ was granted roughly forty years after the conviction, *Korematsu*, where the writ was similarly granted roughly forty years after the conviction, and *Erickson*, where the writ was granted forty-two years after the original conviction. *See Hirabayashi*, 828 F. 2d at 605; *Korematsu v. United States*, 584 F. Supp. 1406, 1409 (N.D. Cal. 1984); *Erickson v. United States*, 757 F. Supp. 2d 1060, 1062-63 (D. Or. 2010). The circumstances in these cases, however, are easily distinguishable from the case at bar. In *Hirabayashi*, the lengthy delay was found to be reasonable because the petition was based on newly discovered evidence that had not been known to the petitioner at the time of his conviction or for many decades thereafter. *Hirabayashi*, 828 F.2d at 605. The same was true in *Korematsu*, where the long delay in seeking coram nobis relief was reasonable in light of the "suppression and distortion of evidence." *Korematsu*, 584 F. Supp. at 1410. And in *Erickson*, the Government did not argue that the petition was untimely, because the petitioner was clearly entitled to some of the relief he sought. *Erickson*, 757 F. Supp. 2d at 1061. Erickson had been convicted in 1968 for refusing induction into the military, but had received a "general pardon issued by President Jimmy Carter on January 21, 1977." *Id.* at 1063. The petitioner sought, pursuant to that pardon, to have his conviction formally vacated. As noted, the Court granted the writ after the Government "conceded Petitioner was entitled to [it]." *Id.*

By contrast here, the Government *does* challenge the timeliness of Indelicato's request and Indelicato is not obviously entitled to the relief sought, as in *Erickson*.[2] And more importantly, Indelicato's petition is not based on newly discovered evidence, as in *Hirabayashi* or *Korematsu*, or even a change in law. Rather, like in *Riedl*, Indelicato has simply chosen to belatedly pursue arguments that could have easily been raised at trial, on appeal, or in a federal habeas petition. 496

---

[2] While the Court does not analyze the petition on the merits in this Order, the Court has considered the merits of the petition and finds them wanting. For instance, the Court has considered the evidence in the record and does not believe the prosecution engaged in improper "sandbagging" during rebuttal. More importantly, however, even if such an error had occurred, that alleged error (along with the substantial majority of the other alleged errors argued in the petition) clearly does not rise to the level of error "of the most fundamental character," as required to obtain coram nobis relief.

F.3d at 1006 (finding that it is dispositive that the same claims raised by coram nobis could have been raised in earlier proceedings). Thus none of the three cases discussed above are of any assistance to Indelicato.

Neither is *Kwan*, the sole remaining case that Indelicato relies on to argue that his petition is timely. 407 F.3d 1005. Indelicato argues that *Kwan* stands for the proposition that where "a petitioner is improperly advised by counsel not to pursue collateral relief, this is considered a valid and sound reason for a delay in filing a coram nobis petition." Docket No. 95 (Reply Br.) at 1. This is not an accurate summation of *Kwan*. In *Kwan*, the petitioner was a lawful permanent resident of the United States who had pleaded guilty to two counts of bank fraud in 1996. 407 F.3d at 1008. Kwan claimed that his trial attorney told him there was "not a serious possibility" he would be deported as a consequence of his plea, and thus Kwan did not seek various downward adjustments at the time of his plea that, if granted, would have possibly prevented him from becoming eligible for deportation under the Immigration and Nationality Act (INA). *Id.* Less than a year after his conviction, the INS instituted deportation proceedings against Kwan. Despite the fact that a federal habeas petition would still have been timely when the INS began deportation proceedings, Kwan's immigration attorney advised Kwan not to file for habeas relief but to *instead* "challenge the INS's determination that Kwan's conviction was an aggravated felony" under the INA. *Id.* at 1013. The Immigration Law Judge (ILJ) ultimately agreed with Kwan, and he was "released from INS custody" in 1997. *Id.* at 1009.

A few years later, however, "the INS issued Kwan a second Notice to Appear, which again informed Kwan that he was subject to deportation because his 1996 conviction was an aggravated felony." *Kwan*, 407 F.3d at 1009. Kwan once again argued in immigration court that his conviction was not an aggravated felony under the INA, but the second ILJ disagreed and found that the conviction rendered Kwan deportable. *Id.* "After Kwan's Motion to Revisit was denied, he filed the petition for writ of coram nobis that is the subject of this appeal." *Id.*

As should be apparent, the facts of *Kwan* are not similar to those here. First, the delay at issue in that case was less than five years, as opposed to more than twenty five here. Far more importantly, however, the Ninth Circuit found that Kwan had not unreasonably failed to attack his

6

conviction earlier because Kwan "sought the advice of counsel and pursued legal remedies to address the collateral consequences of his conviction *during the period of delay*." *Kwan*, 407 F.3d at 1013 (emphasis added). That is, while Kwan had failed to file a habeas petition (or coram nobis petition) on his immigration counsel's advice, the panel found that Kwan had ultimately been diligent in pursuing relief because rather than simply doing nothing, Kwan had actively litigated regarding his conviction in the immigration courts. *Id.* As the panel explained:

> Given the fact that defense counsel had advised him that there was little chance his conviction would cause him to be deported, *Kwan's decision to focus on challenging his deportation on the basis of that conviction was reasonable*. Only after the INS re-initiated removal proceedings against Kwan and determined that this conviction was an aggravated felony under [the INA] did Kwan have reason to conclude that his criminal defense counsel had in fact erred and affirmatively misled him by advising him that there was 'no serious possibility' that his conviction would cause him to be deported.

*Id.* at 1013-14 (emphasis added). Consistent with his obligations to act diligently (*Riedl*, 496 F.3d at 1007) Kwan "sought the advice of counsel and pursued legal remedies to address the collateral consequences of his conviction during the period of delay." *Kwan*, 407 F.3d at 1013. Put simply, Kwan acted reasonably and diligently because throughout the entire time period when he could have pursued habeas or coram nobis relief, he was actively seeking related relief in deportation proceedings. *Id.* As soon as Kwan learned that no such relief would be forthcoming (*i.e.*, INS planned to deport him), he filed his petition for coram nobis. Moreover, while not stated expressly in the Ninth Circuit opinion, it would also seem reasonable that Kwan did not actively attempt to attack his conviction during the period of time between when the first ILJ concluded that the crime of conviction was *not* an aggravated felony under the INA, and the second ILJ reached a contrary conclusion. During this time, Kwan could have reasonably thought that there were no collateral consequences to the conviction because he trusted that the first ILJ's decision rendered him ineligible for deportation.

In sharp contrast here, Indelicato admits that between 1987 and 2012 he undertook no steps whatsoever to challenge his conviction in any forum. Indelicato did not speak to a lawyer about his conviction during this time, or research potential avenues of relief on his own. Indelicato cites no

1 case from any jurisdiction that has granted coram nobis relief on such facts. Rather, Indelicato's
2 case is indistinguishable from those where federal courts have repeatedly rejected coram nobis
3 petitions as untimely. As the Ninth Circuit explained in *Riedl*:

> We and our sister circuits have rejected coram nobis petitions as untimely when the petitioner took 25 years to challenge an undesirable army discharge that he had not previously tried to upgrade, *see Maghe*, 710 F.2d at 503-04, when there was a seven-year delay during which the petitioner did not exercise due diligence, *see Klein v. United States*, 880 F.2d 250, 254 (10th Cir. 1989), and when the petitioner waited 16 years to relitigate a claim that had been raised and dropped on direct appeal, *see United States v. Correa-De Jesus*, 708 F.2d 1283, 1284-86 (7th Cir. 1983).

*Riedl*, 496 F.3d at 1007. If anything, the facts of this case are even more unfavorable to Indelicato than those discussed in *Riedl* and the cases cited therein. Indelicato waited nearly three decades to hire an attorney to research the *possibility* of attacking his earlier conviction. *See* Indelicato Decl. at ¶ 19. Indelicato cannot simply rely on bad advice of counsel in excusing his delay; he had to exercise due diligence. He did not.

Hence, the Court finds that Indelicato has not met his burden to show that "valid reasons exist for not attacking the conviction earlier," and thus denies the petition on this ground. *Id.* at 1006. The Court further denies Indelicato's request for an evidentiary hearing because the record is clear that Indelicato sat on his rights between 1987 and 2012, and Indelicato has not suggested that he would testify differently (*i.e.*, contrary to his prior declaration) at any such hearing.

B. Indelicato's Petition is Barred By Laches

As an independent and adequate ground supporting the Court's denial of the petition, the Court also finds that Indelicato's request for coram nobis relief is barred by laches. As the Ninth Circuit has consistently held, "[a] district court is free at any time to apply laches to a coram nobis petition, if the petitioner inexcusably delays in asserting his claim s and the government is prejudiced by the delay." *Telnik*, 24 F.3d at 47 (citation omitted). To establish laches, the government must "make a prima facie showing of prejudice." *Riedl*, 496 F.3d at 1008. "If the government meets that burden, the burden . . . then shifts to the petitioners to show either that the government actually was not prejudiced or that the petitioner exercised reasonable diligence in filing the [petition]." *Id.* (citations omitted). "In making a determination of prejudice, the effect of the

delay on both the government's ability to respond to the petition and the government's ability to mount a retrial are relevant." *Telnik*, 24 F.3d at 48.

Here, the Government has made a prima facie showing of prejudice. Notably, Indelicato's petition is based on numerous claimed errors that would not prohibit the Government from retrying Indelicato. For instance, Indelicato claims that the prosecution improperly vouched for a government witness and sandbagged defense counsel by putting forth new arguments in rebuttal. *See* Petition at 40. Indeed, Indelicato specifically asks this Court to "vacate the judgment [of conviction] and order a retrial." *Id*. at 57. The Government rightly argues, however, that it would almost certainly be unable to retry Indelicato at this late date. More than 30 years have passed since the events that underlie Indelicato's conviction. No doubt witnesses' memories of these events have likely faded (if not wholly disappeared) over this time. It is undisputed that the physical evidence in this case (the actual rifles) has long been destroyed, and the Government contends that the "taped conversations played at the trial are no longer available from the Court's records." Docket No. 94 at 8. Even the files of Indelicato's own trial counsel are no longer available. *See* Docket No. 76 at 4. Thus, the Government has made out a prima facie showing of prejudice, and the burden shifts to Indelicato to show that the Government has not actually been prejudiced by his delay.

Indelicato clearly cannot meet this burden, nor has he attempted to do so. For instance, Indelicato has made no showing that the key witnesses from the his trial are even still alive,[3] let alone that they adequately remember the events so as to testify about them over thirty years later. Nor has Indelicato shown that important physical evidence, such as tape recorded conversations, are still available to the Government should such evidence be needed for a retrial. Nor, as discussed in the previous section of this Order, has Indelicato met his burden to show that he "exercised reasonable diligence in filing the claim." *Riedl*, 496 F.3d at 1008. Hence, the Court finds that Indelicato's petition for writ of error coram nobis is barred by laches.

---

[3] The Government reasonably argues that a number of the witnesses in the case could be retired or deceased. For instance, the Government notes that one of the ATF agents who testified at trial in 1985 testified that he had been an ATF agent for nineteen years. "If Agent Smith were still serving today, he would be in his fiftieth year of his law enforcement career, which the Court can fairly view as improbable." Docket No. 99 at 3.

### III. CONCLUSION

Indelicato's petition for writ of error coram nobis is denied because it is untimely. It is also barred by laches. Indelicato's request for an evidentiary hearing is denied.

This order disposes of Docket Nos. 85 and 96.

IT IS SO ORDERED.

Dated: September 1, 2015

_____
EDWARD M. CHEN
United States District Judge